IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thomas Harley, | ) | C/A No. 0:13-2350-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Larry Cartledge, Warden; Maj. Earley; Cpt. | ) | |
| Miller; Lt. Cashwell; Sgt. McCall; C/O | ) | |
| Gardner; Harper, HCA; N/P Enloe; PRN Dean; | ) | |
| State Class. Com. Director; Lt. Robinson; Plan | ) | |
| Wker Ogunsile, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Thomas Harley, a self-represented state prisoner, filed this action pursuant to 42

U.S.C. § 1983 alleging a violation of his constitutional rights by the defendants.  This matter is

before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report

and Recommendation on the parties' cross motions for summary judgment.[1]  (ECF Nos. 67, 81 &

84.)  Both parties filed responses (ECF Nos. 72, 87, 91) and the defendants filed a reply (ECF No.

92).  Additionally, Harley has filed a motion for a preliminary injunction (ECF No. 62), motion for

a hearing (ECF No. 68), and motion for default judgment (ECF No. 93).  The defendants filed

responses in opposition to Harley's motion for a preliminary injunction and motion for default

judgment.  (ECF Nos. 74, 94.)  Harley filed a reply to the defendants' response associated with the

_____

[1] Harley's motions for summary judgment are also filed as motions for judgment on the
pleadings.  (ECF Nos. 67, 81.)  As argued in the defendants' declaration (ECF No. 72) in response
to Harley's first motion for summary judgment/judgment on the pleadings (ECF No. 67), that
document is not directed at the defendants.  Rather, it contains objections to the court's order,
entered on May 1, 2014, dismissing the following four defendants from this case, without prejudice
and without service of process:  Robert Ward, Director; Alw Mauney; Sgt. Popella; and Alw Claytar.
(ECF No. 60.)

motion for default.  (ECF No. 96.)  Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Harley's motions should be denied.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Harley to the extent they find support in the record.  (See generally, Am. Compl. & Supp. Mem., ECF Nos. 28, 28-1.)  Harley indicates that he is hearing impaired and has not been provided with a hearing aid while incarcerated at Perry Correctional Institution.  The defendants have posted a notice of Harley's hearing impairment on his cell door.  Harley alleges that, on August 1, 2013, while being escorted by Defendants McCall and Gardner to his cell from a sick call visit, he was unable to hear a directive issued by Defendant McCall.  When Harley did not comply with Defendant McCall's directive, this defendant discharged chemical munitions into Harley's facial area.  Harley further alleges that Defendant McCall pulled on a lead chain secured to Harley's wrist and broke his glasses during the incident.  Harley complains that, after the incident, his medication was confiscated and he was placed in a strip cell for 144 hours.[2]  Defendant Gardner is named by Harley for assisting Defendant McCall.

Harley further alleges a denial of medicine and drinks on various occasions, which he attributes to his inability to hear officers and medical staff announce the delivery of meals and medications.  Harley also complains of placement in a cold cell and laundry issues associated with Defendant Miller's alleged failure to ensure that Harley's bedding is washed and that his worn

---

[2]  It appears that Harley may be complaining of two separate seventy-two hour periods of confinement in a strip cell, where all belongings but a mattress are removed from an inmate's cell. (See ECF No. 28-1 at 8 (referencing a strip cell placement on August 17, 2013); ECF No. 91 at 6 (referencing a seventy-two hour period of strip cell placement on August 1, 2013, and an additional seventy-two hour period of such confinement on August 17, 2013.))



clothes are replaced. The Amended Complaint further claims that a defendant identified only as "State Class. Com. Director" and Defendant Ogunsile have failed to determine the proper custody classification and/or housing assignment for Harley. The Amended Complaint appears to name several defendants under the theory of respondeat superior. Harley, who seeks injunctive relief and monetary damages in this action, additionally asserts a state law negligence claim against the defendants.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.



The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion for Summary Judgment**

**1.    Official Capacity Claims**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State

of South Carolina has specifically denied this waiver for suit in federal district court. <u>See</u> S.C. Code Ann. § 15-78-20(e).

In their motion for summary judgment, the defendants assert that Harley's claims against them in their official capacities fail as a matter of law because the defendants are immune from suit under the Eleventh Amendment. (ECF No. 84-1 at 21.) Harley's response in opposition to the defendants' motion generally claims that the defendants are not entitled to such immunity. (ECF No. 91 at 4.) As arms of the state, the defendants in this case are entitled to sovereign immunity and do not constitute "persons" under § 1983. <u>See Will</u>, 491 U.S. at 70-71. Accordingly, the court concludes that the defendants' motion for summary judgment should be granted as to Harley's official capacity claims seeking monetary relief. <u>Id.</u>; <u>see</u> <u>also</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 2.    Individual Capacity Claims

#### a.    Excessive Force

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Harley must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991); <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such

PJG

punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, " '[w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts

should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  Id.  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams, 77 F.3d at 763 (internal quotations marks & citation omitted).

The Amended Complaint in this case alleges that Defendant McCall, knowing that Harley suffered from hearing loss, used excessive force against him for failing to comply with a verbal directive.  The defendants argue that Harley fails to state a claim for excessive force (ECF No. 84-1



at 7-11) and provide incident reports and affidavit testimony from Defendant McCall in support of their motion for summary judgment (ECF Nos. 84-9, 84-10).  The incident reports and Defendant McCall's affidavit indicate that, upon placing Harley back in his cell on August 1, 2013, Defendant Gardner noticed that Harley's air vent was covered with paper.  When Defendant Gardner removed the paper from the air vent, Harley allegedly became loud, aggressive and noncompliant.  Defendant McCall directed Harley to face the wall; however, Harley moved toward the center of the cell. Defendant McCall directed Harley to stop and administered a "short burst" of chemical munitions toward Harley's face when he failed to comply.  Defendant McCall states that Harley continued to be noncompliant and two more "short bursts" of chemical munitions were administered.  Second responders, including Defendant Cashwell, arrived and Harley began to follow all directives. Harley's property was removed from his cell, his restraints were taken off, and he was evaluated and cleared by Defendant Dean, a nurse.  Defendant McCall's affidavit indicates that Harley was not injured as a result of the incident and was placed in a control cell for seventy-two hours with underwear and a blanket.  The affidavit states that control cell placement is used as a form of discipline in lieu of formal charges for inmates on segregated confinement who have no privileges that can be revoked due to prior infractions.  Defendant McCall states that Harley's property was returned to him on August 4, 2013.

In his response in opposition to the defendants' motion for summary judgment, Harley appears for the first time to allege physical injuries resulting from Defendant McCall's use of chemical munitions and alleged unnecessary manipulation of the lead chain securing Harley's wrists on August 1, 2013.  (ECF No. 91-1 at 15.)  Specifically, Harley alleges injury to his back when Defendant McCall pushed him against the steel door of the cell and injury to his wrist and arm when

Defendant McCall pulled on the lead chain. (Id.) Harley provides medical records which support his contention of severe hearing loss in one ear and confirm that Harley has a sign on his door alerting staff to this hearing impairment. (ECF No. 91-3 at 56, 58.) However, such records do not reflect any injury to Harley resulting from Defendant McCall's actions on August 1, 2013. Instead, Harley's medical records from that date indicate that he was seen by Defendant Dean after the use of chemical munitions and was observed "ambulating in room, talking and yelling at other I/M and staff." (ECF No. 91-3 at 56.) These records further state that Harley had occasional coughing but no respiratory distress and that he did not use his asthma inhaler after the incident. (Id.) The medical records further indicate that Harley was allowed to decontaminate after the chemical munitions were discharged. (Id.) Notably, the medical records provide no mention of any complaints by Harley of injuries to his back, wrists or arms or any notation by Defendant Dean that she observed any such injuries during her examination on August 1, 2013. Thus, the unrefuted evidence in the record does not support Harley's assertion of injuries.

Applying the Whitley factors to the facts viewed in the light most favorable to Harley, the court concludes that no reasonable jury could find that the amount of force used was constitutionally excessive. While Harley alleges that his hearing impairment prevented him from understanding Defendant McCall's command on August 1, 2013, Harley does not dispute the fact that he failed to comply. Further, Harley claims that he did not resist the use of force or threaten the officers, but does not dispute the defendants' contention that the incident was precipitated by Defendant Gardner's removal of paper blocking the air vents in Harley's cell, or evidence presented by the defendants that he became loud and/or belligerent prior to Defendant McCall's use of chemical munitions. In fact, the medical records provided by Harley indicate that he complained of cold cell



temperatures during a sick call visit with Defendant Dean approximately fifteen minutes prior to the incident and had asserted that his medical condition should override security issues associated with having a vent in his cell. (ECF No. 91-3 at 56.) Harley also fails to dispute the defendants' contention that Defendant McCall discharged three short blasts of chemical munitions and ceased the use of force upon Harley's compliance.

The court further concludes that Harley has failed to present evidence from which a reasonable jury could find that the defendants' actions showed "wantonness in the infliction of pain." See Whitley, 475 U.S. at 322; see also Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir.1998) (holding that "[w]hen evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain") (internal quotations omitted). While Harley appears to believe that his hearing impairment was used by Defendant McCall as an excuse to discharge chemical munitions, the undisputed evidence shows that Defendant McCall discharged only the amount of chemical munitions necessary to restore discipline and provided Harley with medical attention and an opportunity to decontaminate shortly after the incident. Accordingly, the court concludes that, based on the facts not disputed by Harley, no reasonable jury could find that the use of force was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 40; see also Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

### b.    Deliberate Indifference—Medical Treatment

The standard for deliberate indifference, requiring an inmate to establish that a sufficiently serious deprivation occurred and that the prison official had a sufficiently culpable state of mind, also applies to medical indifference claims under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Additionally, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was



adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); <u>Fleming v. Lefevere</u>, 423 F. Supp. 2d 1064, 1070 (C.D. Cal.2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

As discussed above, Harley alleges that he has been denied a hearing aid and denied medication and drinks on some occasions when he did not hear prison staff announce the distribution of medication and meal trays. Harley further claims that he has been denied medical care in relation to ailments exacerbated by the cold temperature in his cell and that he was denied an updated "belly chain" pass by Nurse Enloe in May of 2013. In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendant Enloe, a Family Nurse Practitioner, who states that she has provided medical treatment to Harley since his transfer to Perry Correctional Institution. (ECF No. 84-2 at 1.) Defendant Enloe states that Harley requested a belly chain pass during a sick call visit on May 9, 2013, and this defendant approved the request on May 15, 2013. (<u>Id.</u> at 2.) Nurse Enloe further testified that Harley did not have a hearing aid on his person upon transfer, but has been referred to an audiologist for a hearing evaluation for a new hearing aid. (<u>Id.</u>)

Harley's response in opposition to the defendants' motion for summary judgment admits that he has been seen on sick call by Defendants Enloe, Harper, and Dean, and reasserts allegations of a lack of adequate medical care by the defendants. (ECF No. 91-1 at 21-24.) Harley provides copies of his medical records between April of 2013, when he apparently transferred to Perry Correctional Institution, and December of 2013, when he filed the Amended Complaint in this action. (ECF No. 91-3 at 54, 56-58, 64.) These records reflect at least fifteen dates where Harley received medical



attention from the defendants to include sick call visits, follow-up sick call visits, doctor's clinic visits, and visits initiated for security reasons. (Id.) Such records show that Harley was seen for medical complaints associated with his allegedly cold cell to include arthritis pain, chronic back pain, and asthma. (Id.) Harley was provided with an inhaler for asthma and several other medications during that time period. (Id.) These records further show that Defendant Enloe issued, and sent to Harley's dormitory, a belly chain pass on May 15, 2013, to alleviate shoulder pain he allegedly experienced from arthritis when handcuffed from behind. (Id. at 57.)

In regard to the need for a hearing aid, Harley submits medical records showing that he was provided a hearing aid in November of 2002. (Id. at 46.) However, a grievance submitted by Harley indicates that the hearing aid became inoperable while he was incarcerated at Broad River Correctional Institution, was turned in for repair in September of 2010, but could not be repaired. (Id. at 18.) As a hearing aid was not deemed medically necessary at that time, Harley's grievance concerning this issue was denied in January of 2012. (Id.) While Harley's medical records reflect his complaints about the need for a hearing aid while at Perry Correctional Institution, they also indicate an attempt by the defendants to alleviate problems associated with Harley's hearing loss by placing a notice on his cell door alerting staff to this condition. (Id. at 56.) The medical records further reflect that Harley did not have to strain to hear normal conversation during a doctor's clinic on May 23, 2013, could participate well in conversation and had clear speech. (Id. at 64.)

As reflected above, the undisputed record in this case shows that Harley was repeatedly seen and treated by medical staff for his complaints between April and December of 2013, was provided the requested belly chain pass, and has been referred to an audiologist for a hearing evaluation and new hearing aid. Further, medical records reflect that Harley was provided many medications during



the time period at issue.  To the extent Harley missed dosages of medications or drinks, he largely attributes these incidences to his inability to hear rather than any intentional act by the defendants. Moreover, as previously discussed, Harley does not have a claim against the defendants merely because he disagrees with the course of treatment he received.  See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070.  At most, Harley's claims allege negligence or medical malpractice, which is not actionable under § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Accordingly,  the court concludes that Harley's claim of deliberate indifference to a serious medical need fails.

### c.    Deliberate Indifference—Conditions of Confinement

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832 (internal quotations and citations omitted).  To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).  To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care," or



failed to take reasonable measures to guarantee his safety.  Farmer, 511 U.S. at 832.  As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).  Further, a plaintiff asserting unconstitutional conditions of confinement must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition.  See Strickler, 989 F.2d at 1380-81.  However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Harley primarily complains of a cold cell, issues with bedding or clothing, and a 144-hour period in August of 2013 when he was stripped of his belongings.  In support of their motion for summary judgment, the defendants present affidavit testimony from Defendant Cartledge, who indicates that he received grievances from Harley concerning the uncomfortable cell temperature in April and June of 2013.  (ECF No. 84-3 at 1.)  Defendant Cartledge states that thermostats at Perry Correctional Institution, which are checked on a regular basis for compliance,  are "set to 68 degrees Fahrenheit during winter months and 78 degrees Fahrenheit during summer months." (Id. at 2.)  This policy was attached by the defendants as an Exhibit to the affidavit.  (ECF No.  84-7 at 2-7.)  Defendant Cartledge further states that Harley submitted a grievance form in July of 2013 regarding laundry issues but did not follow proper grievance procedures.  (ECF No. 84-3 at 2.)  When afforded an opportunity to file a new grievance, Defendant Cartledge testified that Harley failed to do so.  (Id.)

Harley's response in opposition to the defendants' summary judgment motion essentially reiterates the facts stated in the Amended Complaint and appears to assert that the cell temperature would fluctuate between "freezing and hot." (ECF No. 91-1 at 24.) As indicated previously, medical records submitted by Harley confirm that he complained of a cold cell, but also reflect that he told medical staff that he sometimes failed to wear his jumpsuit because he would then become hot. (ECF No. 91-3 at 56.) Further, while Harley's Amended Complaint alleges that the cold cell temperatures could result in serious injury or death, the medical records submitted by Harley fail to demonstrate that he suffered a serious or significant physical or mental injury as a result of the alleged conditions. Moreover, he has failed to refute the defendants' showing that the temperatures were kept between 68-78 degrees Fahrenheit, and therefore cannot show that there was a substantial risk of serious harm. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). Further, Harley provides no factual information to show an injury resulting from the alleged issues with laundry or the 144-hour period that he was confined in a strip cell. See Sweet v. South Carolina Dep't of Corr., 529 F.2d 854, 865 (4th Cir. 1975) ("[C]onfinement in the 'strip cell' has often been found inoffensive under the constitutional provision if the confinement is for a short duration . . . ."). Accordingly, the defendants are entitled to summary judgment on these claims.

### d.     Custody Classification Claims

A prisoner has no constitutional right to any particular custody or security classification, see Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that prisoners have no constitutionally



protected interest in prison classifications or rehabilitative programs), and no constitutional right to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution.  See Olim v. Wakinekona, 461 U.S. 238 (1983); see also Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.' ") (alterations in original) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  Further, federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control.  See Sandin, 515 U.S. at 482-83 ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.").

Harley's custody classification claims stem from the defendants' alleged failure to afford Harley an adequate or proper custody classification and housing assignment.  However, as discussed above and argued by the defendants in their motion for summary judgment (ECF No. 84-1 at 16), Harley's disagreement with his custody classification does not establish a constitutional violation. Harley's response in opposition to the defendants' motion reasserts his allegations regarding the "freezing and hot" temperature of his cell.  (ECF No. 91-1 at 24.)  However, Harley fails to demonstrate that his custody classification or housing assignment in segregated confinement have imposed an atypical or significant hardship or otherwise exceeded his sentence.  See Sandin, 515 U.S. at 486; see also Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (inmates do not possess a liberty interest in avoiding administrative segregation);  Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of



confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison."). Accordingly, the court finds that the defendants' motion for summary judgment should be granted as to Harley's custody classification claims.

### e.     Respondeat Superior Claims

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 693 (Souter, J., dissenting).

The defendants' motion for summary judgment argues for the dismissal of claims raised by Harley under the theory of respondeat superior. (ECF No. 84-1 at 23-24.) Harley's response in opposition to the defendants' motion  generally states that such claims should not be dismissed because the defendants were aware "of all the facts of all the acts of omissions alleged by the Plaintiff." (ECF No. 91-1 at 30.) This appears to be a conclusory attempt to establish supervisory



liability under § 1983. <u>See</u> <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates)). However, as discussed above, Harley has failed to demonstrate a violation of his constitutional rights by any defendant in this case, supervisory or otherwise. Further, the record is devoid of evidence that would permit a supervisory liability claim under Fourth Circuit precedent. <u>See</u> <u>Carter v. Morris</u>, 164 F.3d 215, 221 (4th Cir. 1999); <u>Shaw</u>, 13 F.3d at 798. Accordingly, the court concludes that the defendants are entitled to summary judgment on Harley's respondeat superior claims.

    **3.     State Law Claims**

    To the extent that Harley's Amended Complaint alleges state law claims against the defendants, the South Carolina Tort Claims Act is the exclusive remedy for individuals suing government employees acting within the scope of their employment. <u>See</u> S.C. Code Ann. § 15-78-70(a); <u>see</u> <u>also</u> S.C. Code Ann. § 15-78-20(b) (partially waiving sovereign immunity and providing for "liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty"). However, in the Tort Claims Act, the State expressly consents to suit only in a South Carolina state court, and does not consent to suit in a federal court or in a court of another state. S.C. Code. Ann. § 15-78-20(e); <u>see</u> <u>also</u> <u>Pennhurst State School & Hospital v.</u> <u>Halderman</u>, 465 U.S. 89, 99 n.9 (1984) (recognizing that a state must expressly consent to suit in a federal district court). Therefore, Harley cannot bring a claim pursuant to the Tort Claims Act in federal court. <u>See</u> <u>Stewart v. Beaufort Cnty.</u>, 481 F. Supp. 2d 483, 493 (D.S.C. 2007) (finding that the court lacked jurisdiction to hear a cause of action arising under the Tort Claims Act).



4.      **Other Claims**

The court notes that Harley mentions a conspiracy in the Amended Complaint, but provides insufficient factual allegations to support such a claim. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim, see Iqbal, 556 U.S. at 667-68; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678-79. Further, for Harley to establish a conspiracy under § 1983, he must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right, see Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996), which he fails to do.

Harley also cites to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., in the Amended Complaint. Harley appears to reference the ADA to demonstrate the extent that his hearing loss is a disabling condition for purposes of his constitutional claims. The defendants have not construed Harley as raising a separate claim under the ADA in this action. Harley's response in opposition to the defendants' motion for summary judgment does not dispute the defendants' contention that the Amended Complaint raises claims under § 1983 and/or claims brought pursuant

to state law.[3]   To the extent Harley is attempting to assert any other claims in his Amended

Complaint, he fails to state a plausible claim for relief.  See Iqbal, 556 U.S. at 667-68.

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion (ECF No. 84) be granted

and that Harley's motions (ECF Nos. 62, 67, 68, 81 and 93) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 24, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3]  The order directing service of this case also construed the Amended Complaint as raising claims brought pursuant to § 1983 and a state law claim of negligence.  (ECF No. 39 at 1.)  The order further indicated that "no other claims are being construed by the court as having been raised by Plaintiff in this action."  (Id.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).